IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LISA RENEE VICK, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No.: GJH-17-156 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 4]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 10, 15]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that Plaintiff's motion be denied, the Commissioner's motion be granted, and the Commissioner's judgment be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Vick protectively filed a claim for Disability Insurance Benefits ("DIB") on November 15, 2012, alleging a disability onset date of October 18, 2012. (Tr. 243-50). Her claim was denied initially and on reconsideration. (Tr. 83-93, 95-110). A hearing was held on

September 22, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 62-82). Following the hearing, the ALJ determined that Ms. Vick was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 35-48). The Appeals Council ("AC") denied Ms. Vick's request for review, (Tr. 1-7), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Vick suffered from the severe impairments of "arthralgia, cervical degenerative disc disease status-post fusion, cervical radiculopathy, cervical spondylosis, chondromalacia patella, chronic pain syndrome, fibromyalgia, gastroesophageal reflux disease, insomnia, left scapular dyskinesia, status-post arthroscopy, major depressive disorder with anxiety, myofascial pain syndrome, right lateral epicondylitis, right rotator cuff tendinopathy, and rotator cuff tear, status-post arthroscopy." (Tr. 38). Despite these impairments, the ALJ determined that Ms. Vick retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she is limited to skilled work, allowing her to alternate between sitting and standing positions, provided that she is not off task more than 10 percent of the workday. The claimant could occasionally use her non-dominant left hand to reach, handle, feel, push, and pull. She could frequently perform reaching[,] handling, feeling, pushing/pulling with the right upper extremity. The claimant could frequently use judgment in making work related decisions that are detailed. She could work in an environment not requiring satisfaction of production pace. She could frequently interact with supervisors and coworkers and occasionally could interact with the general public.

(Tr. 40). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Vick could perform jobs existing in significant numbers in the national economy and therefore was not disabled. (Tr. 47-48).

On appeal, Ms. Vick raises two primary arguments: (1) that the ALJ failed to properly weigh the medical opinion evidence; and (2) that the ALJ failed to properly evaluate Ms. Vick's credibility. Each argument lacks merit and is addressed below.

First, Ms. Vick contends that the ALJ failed to properly weigh the medical opinion evidence. Specifically, Ms. Vicks argues that the ALJ erred by: (1) assigning "little" weight to her treating physiatrist, Dr. Theresa Carlini; (2) assigning "modest weight" to the medical opinions of her treating internist, Dr. Philip Wistosky; and (3) assigning "little" weight to her treating psychologist, Dr. David Hiland. Pl. Mot. Summ. J. 20. A treating physician's opinion is given controlling weight, unless it is not supported by clinical evidence or is inconsistent with other substantial evidence. *See Craig*, 76 F.3d at 590. If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, including the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6). The Commissioner must also consider, and is entitled to rely on, opinions from non-treating doctors. *See* SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Here, the ALJ provided substantial evidence to support his assignments of "little" and "modest" weight to Ms. Vick's treating physicians. In his decision, the ALJ observed that "[t]he opinions of [Ms. Vick's] physicians often appear to repeat the subjective claims [Ms. Vick] sets forth with little objective support for the severity of limitations that they assigned her in their medical source statements." (Tr. 45). Moreover, the ALJ noted that the treating physicians'

3

opinions were "inconsistent with the consultative examiner's opinion and the state agency medical consultant's opinions," and that "[t]he severity of limitations reported by [Ms. Vick's] physician varies significantly based on the physician providing the opinion and [] are also at odds with the physical findings throughout the doctor's records." *Id.* The ALJ thoroughly evaluated and cited to objective medical evidence and testimony that were inconsistent with Ms. Vick's treating physicians' opinions. I will address the ALJ's evaluations of Ms. Vick's treating physicians in turn.

Beginning with the medical opinions of Ms. Vick's treating physiatrist, Dr. Carlini opined that Ms. Vick "must spend four hours in a supine position, could stand and walk for less than an hour[,] and [could] sit for less than two." (Tr. 45); *see* (Tr. 622). The ALJ concluded that Dr. Carlini's "opinions on these areas of function are inconsistent with the various physical examinations and imaging studies in the record." (Tr. 45). The ALJ, for example, observed that Ms. Vick's "imaging studies since [her fusion] procedure have shown generally stable, post-surgical findings, with no abnormality of the hardware placement." (Tr. 42). Moreover, the ALJ noted that Ms. Vick's "physical examinations have shown consistent findings regarding strength, generally measuring 5/5." *Id.* The ALJ also cited Dr. Carlini's treatment notes, which "indicated that [Ms. Vick] should exercise, engage in activity and that her neurological and muscle strength and tone appears intact." (Tr. 43). These inconsistencies, in addition to others cited by the ALJ, provide sufficient justification for the ALJ's decision to accord "little" weight to Dr. Carlini's opinions.

Turning next to Ms. Vick's treating internist, Dr. Wistosky opined that Ms. Vick was restricted "to standing, sitting, walking for less than an hour, with movement every five or ten minutes[.]" (Tr. 45); *see* (Tr. 1994-99). The ALJ assigned "only modest weight" to Dr.

4

Wistosky's opinions after finding that they were "inconsistent with the objective medical evidence," *id.*, and that there was "little support for the extensive restrictions Dr. Wistostky [sic] assigned [Ms. Vick] with regard to manipulative functioning," (Tr. 45-46). In addition to the above-cited treatment records, the ALJ noted that Ms. Vick indicated that she "remains able to drive a vehicle, use a computer, watch television four hours daily, care for a dog[,] [] does not require an assistive device to ambulate or stand[,] . . . cooks a meal once weekly, performs light cleaning[,] and grocery shops." (Tr. 42); *see* (Tr. 68-70). Accordingly, the ALJ found that Dr. Wistosky's opinions were undermined by Ms. Vick's admitted activities, which indicate that she can perform at least a limited range of sedentary work. *See* (Tr. 42-43). In light of the evidence on the record, the ALJ properly supported his assignment of "modest" weight to Dr. Wistosky's opinions with substantial evidence.

Finally, Ms. Vick's treating psychologist, Dr. Hiland, opined that Ms. Vick has "'marked' limitations due to her mental health symptoms." (Tr. 46); *see* (Tr. 936-40). As an initial matter, Dr. Hiland issued this opinion about three months after he began treating Ms. Vick. *See* (Tr. 936-40). Moreover, at the time of the Mental Impairment Questionnaire's completion, Dr. Hiland had only treated Ms. Vick during a nine-day period. *See id.* (indicating that the "Date of first treatment" was July 8, 2014, and that the "Date of most recent exam" was July 16, 2014). As a result, his treatment relationship supports an assignment of lesser weight, since he lacks the type of longitudinal relationship warranting greater deference. *Lang v. Astrue*, Civ. No. TJS-11-1909, 2013 WL 425064, at *3 (D. Md. Feb. 1, 2013) (characterizing a five-month treating relationship as "short-term" and "far from substantial"). Additionally, Dr. Hiland's Mental Impairment Questionnaire and treatment notes consist of a brief "checkbox form opinion[s]" that provide limited opportunity for narrative assessment or citation to the

5

medical record. (Tr. 936-40, 941, 943). *See Brown ex rel. A.W. v. Comm'r of Soc. Sec.*, No. CIV. SAG-12-52, 2013 WL 823371, at *2 (D. Md. Mar. 5, 2013) (noting that "it would be difficult for an ALJ to assign any meaningful weight to opinions devoid of evidentiary support"); *see also Beitzell v. Comm'r, Soc. Sec. Admin.*, No. CIV. SAG-12-2669, 2013 WL 3155443, at *3 (D. Md. June 18, 2013) (upholding the ALJ's assignment of weight and noting that the treating physician's assessment "provided no narrative explanation for the limitations proposed in the form"). Regardless, the ALJ noted that Dr. Hiland's opinion "is not supported by the treatment records that show mild to moderate symptoms throughout the record." (Tr. 46). The ALJ also observed that Ms. Vick's "presentations at the consultative examination, in her physical therapy, . . . and at testimony does not [sic] support 'marked' level limitation due to her mental health symptoms." *Id.* In particular, the ALJ noted that Ms. Vick's mental status examinations "show generally stable thought process, memory, and good reality contact[,]" and that "the level of dysfunction she attribut[ed] to her mental health allegations appears disproportionate with her treatment regimen of individual therapy and medication management and the frequency with which she receiv[ed] such treatment." (Tr. 44). Accordingly, the ALJ's assignment of "little" weight to Dr. Hiland's opinion is supported by substantial evidence.

Second, Ms. Vick contends that the ALJ failed to properly evaluate Ms. Vick's credibility. To determine the credibility of the individual's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996). Importantly, an ALJ must "articulate which of a claimant's individual statements are credible, rather than whether the claimant is credible as a general matter."

6

*Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2015) (quoting *Armani v. Comm'r, Soc. Sec. Admin.*, No. JMC-14-CV-976, 2015 WL 2062183, at *1 (D. Md. May 1, 2015)); *see also Mascio v. Colvin*, 780 F.3d 632, 640 (4th Cir. 2015) ("Nowhere, however, does the ALJ explain how he decided which of [the claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual functional capacity.").

Contrary to Ms. Vick's contention, the ALJ properly evaluated her credibility. First, the ALJ observed that Ms. Vick's admitted daily activities undermined her subjective allegations of pain. (Tr. 42). Most notably, Ms. Vick testified that she was able to "drive to doctor's appointments, [] drive to the pharmacy[,] . . . do very limited grocery shopping[,] . . . cook maybe one -- one meal a week[,] . . . [and] may clean the house one to two times in a month." (Tr. 68). Second, the ALJ noted that Ms. Vick "remains non-compliant with [the] recommendations [of her treating physicians] throughout much of the record." (Tr. 43). The ALJ, for example, cited to treatment records indicating that Ms. Vick "was resistant to PT recommendations[,] . . . exhibits some self-limiting behaviors[,] . . . [and] "has not contacted PT in >30 days and is thus discharged from care." (Tr. 1707). *See also Bettis v. Astrue*, Civil No. SKG-12-826, 2013 WL 1209408, at *11 (D. Md. Mar. 22, 2013) ("[T]he individual's allegations about the effects of pain or other symptoms may be less credible if the individual is not following his or her treatment as prescribed when there are no good reasons for the noncompliance."). Ultimately, the ALJ's detailed evaluation of the record evidence against Ms. Vick's statements regarding her symptoms amply supports the ALJ's conclusion that Ms. Vick's alleged limitations were not entirely credible. Thus, the ALJ properly evaluated Ms. Vick's credibility, and supported his findings with substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 10);

2. the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 15); and

3. the Court CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: December 5, 2017                             /s/
                                                   Stephanie A. Gallagher
                                                   United States Magistrate Judge